**Jacqueline M. ELLIS,
Claimant-Appellant,**

v.

**WESTERN ELECTRIC COMPANY,
Employer-Respondent.**

No. 13306.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 26, 1984.

M. Harvey Pines, Mark S. Corman, Schramm, Pines & Spewak, Clayton, for claimant-appellant.

Ward Fickie, Biggs, Boles, Kopman, Casserly, Fickie and Barnes, P.C., St. Louis, for employer-respondent.

PREWITT, Judge.

Claimant's husband, Dennis Ellis, was killed in an automobile accident and she filed a claim for Workmen's (now Workers') Compensation for herself and their two children. The employer, a self insurer under the Workmen's Compensation Act, contended that the accident did not arise "out of and in the course of his employment". See § 287.120.1, RSMo 1978. Claimant received an award from an administrative law judge, and on review the Labor and Industrial Relations Commission affirmed it. Following appeal to the circuit court the award was reversed, the court finding that there was insufficient evidence to support it. The court also found that the employer was entitled to a credit for amounts paid to claimant following her husband's death.

■ Certain principles are applicable to our review. Courts disturb an award of the Labor and Industrial Relations Commission only when it is not supported by substantial evidence or is clearly contrary to the overwhelming weight of the evidence. *Baldridge v. Inter-River Drainage District of Missouri,* 645 S.W.2d 139, 140 (Mo.App. 1982). All doubts should be resolved in favor of coverage but not to the extent of validating a claim lacking some essential element. *Barr v. Vickers, Inc.,* 648 S.W.2d 577, 580 (Mo.App.1983).

■ Generally an employee does not suffer an injury arising out of and in the course of his employment if he is hurt while journeying to or from the place of his work, but there is an exception to this rule where the employer, because of the distance to the job site or for the convenience of the employer, furnishes the employee's transportation, compensates him for the use of his vehicle, or pays him for travel time. *Garrett v. Industrial Commission,* 600 S.W.2d 516, 519 (Mo.App.1980); *Garbo v. P.M. Bruner Granitoid Co.,* 249 S.W.2d 477, 479–480 (Mo.App.1952).

There was little, if any, dispute in the evidence and many of the facts were stipulated. Mr. Ellis was an employee of the employer at the time of his death. His duties included installing telephone equipment at Southwestern Bell Telephone exchanges in Missouri. In the last year his work locations were St. Louis, Mexico, Eldon, Springfield, Camdenton, and at the time of his death, Versailles.

Mr. Ellis stayed at a motel in Camdenton during the week, commencing with the time Camdenton was his work location, and continued to stay there when he was working out of the Versailles office. The job he was working on was in Gravois Mills. He worked five days a week, Monday through Friday and returned to his home in St. Louis County over the weekends. While returning to Camdenton he was killed on Sunday, November 19, 1978, while driving his car in Camden County.

In addition to his weekly wage Mr. Ellis received from his employer a "per diem" of $24.75 per day for a seven-day week. He was being paid this per diem on the date of his death. The per diem was paid if an employee was on "temporary transfer" more than fifty road miles from his "base location". Mr. Ellis' base location was the city of St. Louis and Versailles was approximately 176 miles away. According to the

schedule in the record, for up to 50 road miles the per diem was $10.75; 50 to 150 miles, $19.25 for certain cities, and $16.25 for the remainder; 150 miles and over, $26.75 for certain cities, and for all other cities $23.50. Versailles is not among the cities listed and how Mr. Ellis received $24.75 according to the schedule which the parties agree was applicable we cannot perceive. However, as the parties do not dispute that Mr. Ellis was paid this amount according to a schedule which increased with distance, we presume this discrepancy to be insignificant to the decision before us.

The per diem allowance is payable for each day of the week, even though an employee is not working every day. They do not.have to account for its use to the employer. In addition to the per diem, an employee on temporary transfer received a mileage and travel time allowance for the initial trip to and the final return trip from the work location.

The parties agree that whether plaintiff is entitled to benefits depends upon whether the per diem is at least in part compensation for travel expenses going to and from his work area on other than the initial and final trip. The employer contends that the per diem was solely for food and lodging while staying near the work location, but offers no explanation as to why the per diem increased as the distance from the base location increased. The administrative law judge found, and the Commission adopted his findings, that the per diem allowance "must have been for extra transportation expenses, extra cost for food and extra living expenses for being out of town."

▌ It is obvious that most of the per diem was for food and lodging. However, we believe the Commission was justified in finding that a portion of it was for travel expense for other than the first trip and the last trip from the work area. On work locations of up to 50 miles away most employees would return home nightly. The $10.75 per diem allowance would not compensate them sufficiently to cover lodging and meals. The biggest percentage increase in the per diems was when the work location went from up to 50 miles to 50 to 150 miles. It was obviously contemplated that the employee might have lodging expenses at a work location over 50 miles from his base location. However, the per diem also increased after that and there is no reason why lodging and food expenses would increase with the increased distance. At least a part of the per diem was likely paid contemplating that an employee would return home when not working during the transfer period and was for the expense of doing so. Returning home on weekends was a common practice that the employer was aware of.

▌ Claimant did not have to absolutely establish the essential elements of her case; it is sufficient if she shows them by a reasonable probability. *Barr v. Vickers,* supra, 648 S.W.2d at 580. "Probable" means that it appears to be founded in reason and experience which inclines the mind to believe, but leaves room for doubt. *Id.*

The increase with distance could be for other expenses such as telephone use, or, as a result of collective bargaining, to discourage the employer from making longer distance transfers. However, there was no evidence of this. The Commission did not so find and upon our review we cannot say that their findings were erroneous. Common reason and experience convince us that one would be inclined to believe that increased travel expenses were the reason for the increase and that this increase was to compensate the employee in part for this expense. In a similar situation the Mississippi Supreme Court reached the same conclusion and while its decision is not controlling, its reasoning coincides with ours. See *Western Electric, Inc. v. Ferguson,* 371 So.2d 864 (Miss.1979). We rule that claimant is entitled to Workmen's Compensation benefits due to her husband's death.

We next consider whether the employer was entitled to a credit for $18,042.32. The only evidence regarding this was during the cross-examination of claimant. During that cross-examination she testified that she received two checks of the employer

following her husband's death. A check for $56,360.74 was apparently paid under an insurance plan. She said a check she received for $18,042.43, "directly from Western Electric" bore a notation that it was for the "equivalent to a year's salary." When the administrative law judge asked employer's counsel if the $18,042.43 payment was an insurance payment, he replied, "No, sir. I will have evidence on that later." No evidence of the source of the funds was presented and the check was not offered in evidence. The administrative law judge and Commission denied the credit because there was no evidence of the source of the funds for that check. Claimant contends that for this reason the denial was proper.

Section 287.160.3, RSMo 1978, provides that "The employer shall be entitled to credit for wages paid the employee after the injury, and for any sum paid to or for the employee or his dependents on account of the injury except for liability under section 287.140." Section 287.140 generally provides for medical treatment and services. Section 287.270, RSMo 1978, provides "No savings or insurance of the injured employee, nor any benefits derived from any other source than the employer or the employer's insurer for liability under this chapter, shall be considered in determining the compensation due hereunder."

Several decisions have held that payments made under an employee benefit plan have entitled the employer to credit against the Workmen's Compensation benefits. *Hull v. Southwestern Bell Telephone Company,* 565 S.W.2d 809 (Mo.App.1978); *Cowan v. Southwestern Bell Telephone Co.,* 529 S.W.2d 485 (Mo.App.1975); *Strohmeyer v. Southwestern Bell Telephone Company,* 396 S.W.2d 1 (Mo.App.1965). See also *Point v. Westinghouse Electric Corporation,* 382 S.W.2d 436 (Mo.App.1964). Payments from an insurance company or from any source other than the employer or the employer's insurer for liability for Workmen's Compensation are not to be credited on Workmen's Compensation benefits. *Homan v. American Can Company,* 535 S.W.2d 574, 576 (Mo.App.1976). In each of these cases evidence

regarding the payments was more fully developed.

■ *Point v. Westinghouse Electric Corporation,* supra, indicates that the burden to substantiate a credit is on the employer. 382 S.W.2d at 439. This seems to be in accord with other analogous situations. The burden of proving payment is on the party asserting it. *Don Anderson Enterprises, Inc. v. Entertainment Enterprises, Inc.,* 589 S.W.2d 70, 73 (Mo.App.1979); *Hubbard v. Happel's Estate,* 382 S.W.2d 416, 424 (Mo.App.1964). We think it only reasonable to put the burden of showing facts entitling it to a credit on the employer. The question then is whether this burden was met by evidence showing claimant was paid by a check of the employer without showing why the payment was paid and that the funds came only from the employer.

The widespread use of insurance as an employee benefit prevents us from saying that there is a probability that the funds came only from the employer because they were disbursed on the employer's check. According to the record, another check of the employer was used to pay claimant funds she was entitled to under an insurance plan. Whether there was more than one applicable plan or program which might entitle her to funds is not apparent from this record. Neither of the payments were made intending them to be in part Workmen's Compensation benefits as from the start the employer has denied that the accident was compensable.

■ The employer could have presented evidence regarding the source of its payment and by not doing so suspicion is created that such evidence might have revealed that it was not entitled to a credit. Certainly the employer would be in a better position than claimant to know the source of the funds. Even if we assume that the evidence tended to show that the employer was the source of the funds, its failure to establish this more precisely and its failure to offer additional evidence could cause the commission to have sufficient doubts to justify it in denying the credit. Based upon

our limited review, we cannot say that the Commission erred in denying the credit.

In its brief the employer contends that if the circuit court's judgment is not sustained then we should remand to the circuit court for it to rule on the employer's application to submit additional evidence. The employer contends that it filed the application seeking to offer evidence regarding a blood alcohol analysis of Dennis Ellis taken after the accident. According to the transcript of the proceedings before the administrative law judge, no attempt was made to offer such evidence there. In a pleading filed in the circuit court the employer contended that on June 18, 1980, it filed the application with the Commission. The Commission's findings and award made no reference to the application. The application is not in the record before us.

Whether additional evidence should be heard rests in the sound discretion of the Commission and the exercise of such discretion will not be disturbed on appeal unless it is shown to be arbitrary or unreasonable. *Cagle v. Regal Plastics Company*, 522 S.W.2d 7, 11–12 (Mo.App.1975).

The accident occurred on November 19, 1978. The claim for compensation was filed on March 15, 1979, and the hearing before the administrative law judge held on December 12, 1979. The administrative law judge made his decision on March 14, 1980. The application for review before the Commission was filed on March 27, 1980. The Commission's award was made October 1, 1981. The notice of appeal to the circuit court is dated October 15, 1981, and the circuit court's judgment was filed April 14, 1983. It appears that there was ample time for the employer to present or attempt to present this evidence at the hearing before the administrative law judge, and to secure a record showing why the application should have been granted. As we do not have anything in the record indicating otherwise, we cannot say the Commission erred in not granting the application.

The judgment of the circuit court is reversed and the award of the Labor and Industrial Commission is reinstated and affirmed.

MAUS, P.J., and HOGAN, J., concur.